IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY COOPER, *et al.*, | : | |
| | : | Case No. 2:16-cv-00163 |
| Plaintiffs, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Deavers |
| JUDGE JAMES S. RAPP, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

This matter is before the Court on the Motion to Dismiss (Doc. 12) of Defendants Judge James S. Rapp and the Wyandot County Court of Common Pleas (collectively, "Defendants"). Defendants have moved to dismiss the Amended Complaint (Doc. 11) of Plaintiffs Timothy H. Cooper and Ambrose Moses, III (together, "Plaintiffs") for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted.  For the following reasons, the Court **GRANTS** Defendants' Motion.

**I.  BACKGROUND**

**A.  Factual Background**

As stated in Plaintiffs' Amended Complaint, this action "arises from [] state court proceedings" (Am. Compl. ¶ 1) involving cognovit notes and the confession of judgment procedures established by Ohio Revised Code Section 2323.13 (the "State Court Proceedings"). (*Id.* ¶¶ 17–22.)  Moses, a licensed Ohio attorney, initiated the State Court Proceedings by filing a complaint in the Wyandot County Court of Common Pleas on behalf of Cooper.[1]  (*See id.* ¶¶ 14,

---

[1] Moses's decision to initiate the State Court Proceedings in December 2013 was precipitated by this Court's grant of summary judgment in a putative class action (*Timothy H. Cooper v. Commercial Savings Bank, et al.*, Case No. 2:12-cv-00825) that was based on the same substantive claims as those brought in the State Court Proceedings.  (*See*

1

17–22.)  Defendant Judge Rapp, who was assigned to preside over the State Court Proceedings (*see id.* ¶ 31), granted summary judgment in favor of defendants Commercial Savings Bank, Linden Beck and Sean Martin (counsel for Commercial Savings Bank) and Charles Bartholomew (the attorney confessing judgment) in June 2014.  (*Id.* ¶¶ 21, 32.)  The state court defendants then moved for sanctions against Plaintiffs Cooper and Moses, and, after a hearing held in September 2014, Judge Rapp issued monetary and non-monetary sanctions against Plaintiffs.  (*Id.* ¶ 33.)  As a monetary sanction, Judge Rapp ordered Plaintiffs to pay the defendants' attorneys' fees in the amount of $43,704.00.  (*Id.* ¶ 34.)  The non-monetary sanctions were issued against Moses only.  (*Id.* ¶ 35.)  Judge Rapp ordered Moses to submit a written apology to the state court defendants for making "unsupported, specious, and scandalous attacks" against them, and to post that apology on the website Moses had created about the lawsuit.  (*Id.*)

In this action, Plaintiffs take issue with Judge Rapp's decisions to issue summary judgment and order sanctions in the State Court Proceedings, alleging that these decisions were based on racial bias, as evidenced by conduct he displayed during the State Court Proceedings.  (*See id.* ¶¶ 36–39, 42.)  Specifically, Plaintiffs allege that "during the sanctions hearing and each of the trial court hearings" he conducted, Judge Rapp made "facial expressions and displayed body language while Attorney Moses was speaking and testifying which expressed and communicated the message that Judge Rapp had very negative feelings towards and was biased against Attorney Moses" because he was African-American.  (*Id.* ¶ 42.)  According to Plaintiffs, Judge Rapp did not display this same negative body language or facial expressions when the defendants' Caucasian attorneys spoke or testified.  (*Id.* ¶ 43.)

---

Am. Compl. ¶¶ 28–30.)  Judge Frost granted summary judgment in favor of the defendants on the federal claims in that action, and dismissed the state law claims without prejudice to refiling them in state court.  (*Id.* ¶ 29.)

2

As additional "evidence" of Judge Rapp's purported racial bias, Plaintiffs cite in their Amended Complaint portions of a report issued by the Ohio Supreme Court's Commission on Racial Fairness. (*See id.* ¶¶ 45–49.) Specifically, Plaintiffs note that the report found that "most Ohio judges are white" and have had limited interaction with minorities (*id.* ¶ 45) and that "[j]udges are human, and prejudices, perceptions, and stereotypes are not lost with the elevation to the bench." (*Id.* ¶ 47.) Plaintiffs also note that Ohio has a long history of *de jure* and *de facto* racial bias as evidenced by its "*Black Codes*" and thus it is "reasonable to conclude that [the existence of] racial bias [within Ohio's legal system] and the perception of racial bias are a statistical fact." (*Id.* ¶ 53.) Plaintiffs therefore argue that because Judge Rapp is a white judge who has been a governmental official in the predominantly white Hardin County for the majority of his career, it is safe to assume that he is racially biased and is operating within a racially biased legal system. (*See id.* ¶¶ 50–51.)

## B.  Procedural Background

Plaintiffs' Amended Complaint alleges that Judge Rapp's (and, by extension, the Wyandot County Court of Common Pleas') purported conduct during the State Court Proceedings gave rise to violations of the First, Fourth, Fifth, Eighth, Ninth, Thirteenth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. (*Id.* ¶ 1.) Plaintiffs do not address these alleged violations as individual counts in their Amended Complaint; rather, they present the substance of the alleged violations and the relief requested in a single paragraph styled as a "Claim and Prayer for Relief – Declaratory Judgment." (*Id.* ¶ 60.) Plaintiffs ask the Court for:

- An order declaring that the state court defendants' conduct with respect to cognovit notes and confession of judgment proceedings was unlawful.[2]  (*Id.* ¶ 60a.)

- An order declaring that Defendants have unconstitutionally denied Plaintiffs their rights to free speech, freedom of association and due process by imposing monetary sanctions on them and non-monetary sanctions on Moses.  (*See id.* ¶ 60b–d.)

- An order declaring that Defendants have engaged in racially discriminatory and disparate treatment in violation of the First, Fourth, Fifth, Eighth, Ninth, Thirteenth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. (*Id.* ¶ 60e.)

- An order enjoining Defendants from engaging in "such unlawful and wrongful conduct in the future" and "staying or otherwise enjoining" the State Court Proceedings, including a hearing scheduled for March 3, 2016 and an order requiring Moses to surrender himself to the sheriff by May 16, 2016 for incarceration until Moses complied with the State Court's non-monetary sanctions order.[3]  (*Id.* ¶ 60f–h.)

- "The costs of this lawsuit, and attorney fees; nominal damages, and such other and further relief as the Court may deem proper."  (*Id.* ¶ 60i.)

Defendants filed a Motion to Dismiss all of Plaintiffs' claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  This Motion is now fully briefed and ripe for review.

---

[2] The state court defendants are not parties to this action.

[3] An order staying or enjoining the two specifically referenced hearings would be moot at this juncture.

## II.  STANDARD OF REVIEW

Defendants move to dismiss Plaintiffs' Amended Complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

### A.  Motion To Dismiss for Lack of Subject-Matter Jurisdiction.

Motions to dismiss under Rule 12(b)(1) "are categorized as either a facial attack or a factual attack." *Bell v. United States*, 4 F. Supp. 3d 908, 913 (S.D. Ohio 2014) (quoting *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012)).  A facial attack on subject-matter jurisdiction is a "challenge to the sufficiency of the pleading itself," and therefore is resolved under the familiar Rule 12(b)(6) standard.  *Id.*  By contrast, a factual attack "challenges the factual existence of subject matter jurisdiction."  *Id.*  In the case of a factual attack, the court may "weigh evidence to confirm the factual predicates for subject-matter jurisdiction."  *Id.*  Irrespective of whether the challenge to subject-matter jurisdiction is facial or factual, the party invoking federal jurisdiction bears the burden of proving its existence.  *Id.*  (Internal citation omitted).

Where, as here, Plaintiffs' standing is challenged under a Rule 12(b)(1) motion at the pleading stage of the litigation and discovery has not yet commenced, it is proper for the Court to construe Defendants' Motion as a facial challenge to subject-matter jurisdiction.  *See Kal Kan Foods, Inc. v. Iams Co.*, 197 F. Supp. 2d 1061, 1066–67 (S.D. Ohio 2002).  Additionally, because the Court need not consider additional evidence to resolve the motion, the Court will treat Defendants' challenge to subject-matter jurisdiction as a facial challenge and will address it using the Rule 12(b)(6) standard.  *See Hunt v. United States*, No. 01-2462-KHV, 2002 WL 553736, at *1 (D. Kan. Apr. 4, 2002); *see also Yuksel v. N. Am. Power Tech., Inc.*, 805 F. Supp.

310, 311 (E.D. Pa. 1994) (when no affidavits, depositions or other factual matters have been presented, a Rule 12(b)(1) motion is a facial attack).

### B. Motion To Dismiss for Failure To State a Claim under Rule 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) allows for a case to be dismissed for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Thus, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Ben. Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But the complaint must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (internal quotation marks and citation omitted). In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

6

## III.  LAW AND ANALYSIS

### A.  The Court Does Not Have Subject-Matter Jurisdiction Over Plaintiffs' Claims.

As a threshold matter, the Court notes that the procedural status of the State Court Proceedings requires it to conduct a unique subject-matter jurisdiction analysis.  While Plaintiffs are careful to avoid addressing the posture of the State Court Proceedings in their Amended Complaint, according to Defendants' Motion to Dismiss, Plaintiffs' appeal of a portion of the State Court Proceedings was pending in Ohio's Third District Court of Appeals at the time the Amended Complaint was filed.  (Doc. 12 at 6, Exs. A & B.)  "Federal courts may take judicial notice of proceedings in other courts of record," *Granader v. Pub. Bank*, 417 F.2d 75, 82–83 (6th Cir. 1969), and thus the Court's acknowledgment of the pendency of the State Court Proceedings—though not pleaded in Plaintiffs' Amended Complaint—does not convert Defendants' Motion to Dismiss into one for summary judgment.

Because this Court is charged with determining whether there is a *current* case or controversy before it, *see Chamber of Commerce v. Ohio Elections Comm'n*, 135 F. Supp. 2d 857, 861 (S.D. Ohio 2001), and, recognizing that it must apply *either Rooker-Feldman* or *Younger* based on status of the State Court Proceedings, the Court *sua sponte* researched the current status of Plaintiffs' appeal in Ohio's Third District.  According to the state appellate court docket, Plaintiffs' latest appeal[4] was filed April 4, 2016, and was dismissed on April 29, 2016.  Thus, the appeal was pending when Plaintiffs' Amended Complaint was filed on April 14, 2016 (*see* Doc. 11), and when Defendants' Motion to Dismiss was filed on April 26, 2016 (*see* Doc. 12), but it is now terminated.

---

[4] Plaintiffs have filed a total of three appeals in the State Court Proceedings.

The Court finds that it lacks subject-matter jurisdiction over Plaintiffs' claims. This is true regardless of whether the Court considers the current status of the State Court Proceedings or the status at the time Plaintiffs filed their Amended Complaint.

1. *Plaintiffs' Claims Are Barred by the* Rooker-Feldman *Doctrine*.

If the Court, in its effort to determine the existence of a *current* case or controversy, reviews Plaintiffs' claims knowing through its independent research that the appeal of the State Court Proceedings has been dismissed by the Third District, the claims are barred under the *Rooker-Feldman* doctrine.[5] *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

*Rooker-Feldman* provides that federal courts are divested of subject-matter jurisdiction in "cases where they are called upon to review state court judgments." *Johnson v. Ohio Supreme Court*, 156 F. App'x 779, 781 (6th Cir. 2005) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 282 (2005)). In other words, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state court judgments," *id.* (internal quotation marks and citation omitted), and over claims that are "inextricably intertwined" with state court judgments. *Id.* at 782. This includes cases like this one, where "the federal claims asserted turn so directly on the state court judgments that the federal courts must review the state court judgments to resolve the federal claims." *Id.* District courts cannot even review federal constitutional claims attacking a state court judgment if those constitutional claims are inextricably intertwined with the state court's judgment. *Id.*

---

[5] It is not the province of the Court to determine the substance of each of Plaintiffs' appeals of the State Court Proceedings. But, it is likely that Plaintiffs' first two appeals are also related to the federal claims Plaintiffs bring in this Court. Those two appeals were filed and dismissed before the Plaintiffs filed their Amended Complaint in this Court.

Plaintiffs themselves admit that this lawsuit arises from the State Court Proceedings. (*See* Am. Compl. ¶ 1.) All of Plaintiffs' claims of racial bias are inextricably intertwined with Judge Rapp's decisions and the hearings that occurred in state court. For example, Plaintiffs allege that Judge Rapp's grant of summary judgment and decision to issue sanctions was based on his decision to "punish the African American lawyer . . . and his client" rather than the Caucasian defendants and their attorneys, even though the defendants "admitted in open court that they did not comply with the requirements of R.C. § 2323.13." (*Id.* ¶ 37.) And the only allegedly racially biased conduct of Judge Rapp mentioned by Plaintiffs purportedly occurred during court proceedings. (*See id.* ¶¶ 40–41.)

In short, in order for the Court to review Plaintiffs' federal constitutional claims against Judge Rapp and the state court, it would have to review the reasoning behind Judge Rapp's summary judgment and sanctions rulings, and consider the Judge's conduct during the State Court Proceedings. This is precisely the type of review prohibited by *Rooker-Feldman*.

2. Younger *Abstention Bars Plaintiffs' Claims*.

In the alternative, if the Court considers Plaintiffs' claims based on the status of the State Court Proceedings at the time Plaintiffs' Amended Complaint was filed, Plaintiffs' claims are still not properly in federal court, under the *Younger* abstention doctrine.[6] *Younger v. Harris*, 401 U.S. 37 (1971). Pursuant to *Younger*, absent extraordinary circumstances, "a federal court may not grant injunctive or declaratory relief that would interfere with state judicial proceedings

---

[6] In their Motion, Defendants do not always clearly establish whether a particular argument for dismissal falls under Rule 12(b)(1) or 12(b)(6). This Court will consider Defendants' argument for dismissal based on *Younger* abstention as an argument for dismissal under Rule 12(b)(1), *see Farkas v. Ohio*, No. 2:12-cv-547, 2012 WL 3600201, at *2–*3 (S.D. Ohio Aug. 21, 2012), although courts also hold that "a claim may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if the matter is appropriately within the principles of *Younger* abstention." *Hartfield v. E. Grand Rapids Pub. Sch.*, 960 F. Supp. 1259, 1267 (W.D. Mich. 1997).

9

*pending at the time that a federal complaint is filed.*"[7] *Shafizadeh v. Bowles*, 476 F. App'x 71, 73 (6th Cir. 2012) (emphasis added) (quoting *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008) (internal quotation marks omitted)). *Younger* abstention also applies to claims for damages under § 1983; a federal court may dismiss a § 1983 damages claim brought alongside claims for declaratory or injunctive relief. *See Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 700–01 (6th Cir. 2013). A federal court should abstain on the basis of the *Younger* doctrine whenever it determines that: (1) state court proceedings are pending; (2) the state proceedings involve an important state interest; and (3) the state proceedings will afford the plaintiff an adequate opportunity to raise constitutional claims. *Mann v. Conlin*, 22 F.3d 100, 105 (6th Cir. 1994). Here, considering Plaintiffs' claims at the time they filed the Amended Complaint, all three requirements for *Younger* abstention are satisfied, thereby precluding federal jurisdiction.

First, as stated above, the State Court Proceedings were pending in a state appellate court when the Amended Complaint was filed (*see* Doc. 11) and Defendants' Motion was briefed. (Doc. 12 at 6.) Second, the State Court Proceedings concern important state interests. As set forth in the Amended Complaint, the State Court Proceedings involve Ohio's statutory cognovit note and confession of judgment process. (Am. Compl. ¶¶ 17–22.) Judge Rapp granted the state court defendants summary judgment on the substantive issues, and also sanctioned Plaintiffs after deeming their lawsuit frivolous. (*See id.* ¶¶ 32–35.) It goes without saying that a state's ability to implement and interpret its own laws and policies and administer its judicial system are important interests. *See Carras v. Williams*, 807 F.2d 1286, 1292 (6th Cir. 1986). Inherent in a state's ability to "vindicate[] the regular operation of its judicial system" is a state court judge's

---

[7] In *Younger v. Harris*, the Supreme Court held that "a federal court should not enjoin a pending state criminal proceeding unless the danger of irreparable loss is both great and immediate." *Berger v. Cuyahoga Cty. Bar Ass'n*, 983 F.2d 718, 722 (6th Cir. 1993) (quoting *Younger*, 401 U.S. at 45 (internal quotation marks omitted)). The Supreme Court extended *Younger* to "noncriminal judicial proceedings when important state interests are involved." *Id.* (quoting *Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

ability to render decisions, and a state court's ability to enforce judgments through sanctions or the contempt process. *See Juidice v. Vail*, 430 U.S. 327, 336 (1977). Thus, regardless of whether Plaintiffs' appeal of the State Court Proceedings is primarily concerned with Judge Rapp's summary judgment ruling on the substantive claims or his decision to sanction them—or both—significant state interests are at issue with which this Court should not interfere. Finally, with regard to the third question, Plaintiffs have failed to allege that appealing the State Court Proceedings did not provide a sufficient opportunity for them to raise their constitutional challenges. *Dyer v. Ohio*, No. 1:08-cv-706, 2008 WL 4758676, at *3 (S.D. Ohio Oct. 4, 2008). In considering this factor, "a federal court must presume that the state courts are able to protect the interests of a federal plaintiff." *Id.* (citing *Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995)).

For these reasons, and because Plaintiffs have not "alleged facts showing the existence of extraordinary circumstances barring abstention," *id.*, *Younger* abstention applies to bar Plaintiffs' claims based on the status of the State Court Proceedings at the time of the Amended Complaint's filing.

For all of the reasons stated in Sections A.1. and A.2., the Court lacks subject matter jurisdiction over Plaintiffs' claims.

### B. Plaintiffs' Complaint Fails To State A Claim Upon Which Relief Can Be Granted.

Although the Court has already determined that both *Rooker-Feldman* and *Younger* bar Plaintiffs' claims and that it will dismiss the Amended Complaint in its entirety under Rule 12(b)(1) so as not to "disrupt the comity between federal and state courts," *Mann*, 22 F.3d at 105, the Court notes that dismissal is also warranted under Rule 12(b)(6). Because judicial immunity shields Judge Rapp from Plaintiffs' claims and the state court cannot properly be sued, Plaintiffs

11

are left without any parties against whom to pursue their claims, and thus their Amended Complaint fails to state a claim upon which relief can be granted.

1. *Judge Rapp Is Immune from Plaintiffs' Claims.*

In this lawsuit, Plaintiffs have brought claims for injunctive and declaratory relief and damages against Judge Rapp (Am. Compl. ¶ 60), and have sued Judge Rapp "[i]ndividually and in his official capacity." (*Id.* at 1.) Judge Rapp is immune from all of Plaintiffs' claims.[8]

a. Judge Rapp Is Immune from Plaintiffs' Damages Claim.

It is well-settled that judges are immune from lawsuits for money damages, including actions brought under § 1983 to recover for alleged deprivations of civil rights. *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Stern v. Mascio*, 262 F.3d 600, 606 (6th Cir. 2002). If judges were "personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits." *Forrester v. White*, 484 U.S. 219, 226–27 (1988) (internal citations omitted). Further, "[m]ost judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability." *Id.* at 227.

While judicial immunity is far-reaching, because "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches," the doctrine does have two exceptions. *Id.* (emphasis in original). First, a "judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12 (internal citations omitted). Neither exception applies here.

---

[8] Judicial immunity "operates to protect judges . . . from suit in both their official and individual capacities." *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007) (internal citation omitted).

12

The actions that Plaintiffs take issue with in this case are the "negative facial expressions and body language" allegedly displayed by Judge Rapp during the sanctions hearing and other trial court hearings he conducted during the State Court Proceedings. (Am. Compl. ¶ 42.) According to Plaintiffs, Judge Rapp's negative facial expressions and body language reflect racial bias, as he displayed them only while Moses was arguing or testifying—not while the state court defendants' Caucasian lawyers did so.[9] (*See id.* ¶ 43.) All of Judge Rapp's acts were judicial in nature.

When determining whether an act is judicial, the central inquiry is whether the act is a "function normally performed by a judge" and whether a party "dealt with the judge in his judicial capacity." *Mireles*, 502 U.S. at 12. The focus is on the "nature and function of the act, *not the act itself*." *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978) (emphasis added)) (internal quotation marks omitted). Acts of "actual adjudication, *i.e.*, acts involved in resolving disputes between parties who have invoked the jurisdiction of the court," are "paradigmatic judicial acts." *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997) (internal citation omitted). In cases involving paradigmatic judicial acts, "[t]he application of judicial immunity is simple and non-controversial." *Id.*

In *Mireles*, an attorney brought a claim under § 1983 against a judge, alleging that after the attorney failed to appear in court for a scheduled hearing, the judge, angered by the attorney's absence, ordered two police officers "to forcibly and with excessive force seize and bring plaintiff into his courtroom." *Mireles*, 502 U.S. at 10. The officers allegedly used excessive force to "violently seize[] plaintiff and remove[] him from another courtroom . . . called him

---

[9] The other allegations Plaintiffs raise in an effort to show that Judge Rapp is biased—i.e., the fact that Judge Rapp, like most Ohio judges, is white; and the historical evidence of racial bias in Ohio's legal system—are conclusory and unsupported by facts. Because these allegations do not give rise to a claim for relief that is plausible on its face, they will not be considered by the Court in evaluating the applicability of judicial immunity. *Twombly*, 550 U.S. at 570.

13

vulgar and offensive names," and "slammed him through the doors and swinging gates" into the judge's courtroom. *Id.* The Supreme Court held that, even taking the plaintiff's allegations as true, as required on a motion to dismiss, the acts complained of were judicial. According to the *Mireles* Court, "[a] judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge." *Id.* at 12. Because the plaintiff "was called into the courtroom for purposes of a pending case" he was "dealing with Judge Mireles in the judge's judicial capacity." *Id.*

In *Mann v. Conlin*, 22 F.3d 100 (6th Cir. 1994), a less extreme case than *Mireles* with facts more akin to those here, several plaintiffs filed a § 1983 action, claiming that a judge's "manner of conducting cases" violated their due process and equal protection rights. *Id.* at 101. Specifically, one plaintiff objected to the judge's decision to imprison her for failing to obey a custody order, *id.* at 102, and another alleged that the judge was "openly biased against her and showed favoritism" to the other party. *Id.* The Sixth Circuit noted that, while the judge's acts may have "occasionally been in error or seemed unduly harsh," there was "no escaping the conclusion that the offending acts [were] judicial." *Id.* at 104. In fact, because the judge's acts involved the resolution of disputes between parties invoking the court's jurisdiction and his orders "affected the rights of only the individual plaintiffs in the specific judicial proceedings," the Sixth Circuit held that Judge Conlin's acts were examples of "paradigmatic judicial acts." *Id.*

Here, as in *Mann*, the acts Plaintiffs complain of—Judge Rapp's decisions and conduct during hearings—are quintessentially judicial. While Plaintiffs claim that Judge Rapp's conduct "expressed and communicated the message" that he was racially biased towards Moses, (Am. Compl. ¶ 42), Plaintiffs do not allege that Judge Rapp used racial slurs, made any racially

14

insensitive comments or remarks—or even mentioned race at all—during any court proceedings, or that he cited race as a reason for his decisions. But, assuming it is true, as the Court is required to do on a motion to dismiss, *Anthem Blue Cross & Blue Shield*, 552 F.3d at 434, that Judge Rapp's facial expressions, body language and substantive decisions were motivated by racial bias toward Moses, for purposes of judicial immunity, the *function* of Judge Rapp's conduct must be the primary consideration—not the conduct itself. *Forrester*, 484 U.S. at 227.

Issuing decisions and presiding over hearings, including sanctions hearings, are functions typically performed by a judge. Moses experienced Judge Rapp's decisions and alleged conduct as an attorney representing a client in a case before him; thus, Moses was dealing with Judge Rapp in his judicial capacity. Finally, Judge Rapp's decisions and alleged conduct involved the resolution of disputes between parties invoking his court's jurisdiction and his orders affected only the parties to the State Court Proceedings. Accordingly, Judge Rapp's actions were "paradigmatic judicial acts." *Mann*, 22 F.3d at 104.

As for the requirement that a judge act within his jurisdiction in order for judicial immunity to apply, Plaintiffs acknowledge that Judge Rapp is a senior judge on the Wyandot County Court of Common Pleas, and the judge who was assigned to preside over the State Court Proceedings. (Am. Compl. ¶¶ 11, 31.) Plaintiffs have not alleged that Judge Rapp has acted outside of his jurisdiction. For these reasons, Judge Rapp is immune from Plaintiffs' claim for damages under § 1983.

    b. <u>Judge Rapp Is Immune from Plaintiffs' Claims for Declaratory and Injunctive Relief.</u>

Judicial immunity also applies to bar Plaintiffs' claims for declaratory and injunctive relief. The plain language of § 1983 prohibits injunctive relief "unless a declaratory decree [has been] violated or declaratory relief [is] unavailable." *Ward v. City of Norwalk*, 640 F. App'x

462, 467 (6th Cir. 2016). Plaintiffs do not allege in their Amended Complaint that Judge Rapp has violated a declaratory judgment, nor do they demonstrate that declaratory relief is unavailable. Indeed, they seek declaratory and injunctive relief simultaneously. (*See* Am. Compl. ¶ 60.)

While the possibility of declaratory relief against a judge is implicitly recognized in the language of § 1983, *see Ward*, 640 F. App'x at 467, it is not warranted here. Under Article III of the United States Constitution, a case or controversy must exist in order for a party to obtain declaratory relief. *Id.* at 468. And there is no justiciable controversy between a plaintiff in a lawsuit and the judge presiding over that lawsuit. *See In re Justices of Supreme Court of P.R.*, 695 F.2d 17, 22 (1st Cir. 1982). In a lawsuit, a judge "is not an adversary of the plaintiff, but a judicial officer bound to decide the issue according to the law as he finds it . . . . His posture [is] that of an entirely disinterested judicial officer and *not in any sense* the posture of an adversary to the contentions made on either side of the case." *Supreme Court of P.R.*, 695 F.2d at 22 (emphasis added). Judge Rapp is therefore also immune from Plaintiffs' declaratory and injunctive relief claims.

2. *The Wyandot County Court of Common Pleas Is Not* Sui Juris.

Plaintiffs have also sued the Wyandot County Court of Common Pleas. But the state court is not a proper party, because it lacks an "independent legal existence" and thus is incapable of being sued. *Leisure v. Franklin Cty. Court of Common Pleas*, No. 2:07-cv-817, 2008 WL 4239005, at *4 (S.D. Ohio Sept. 8, 2008). Indeed, a court is simply a place "in which justice is judicially administered. It is the exercise of judicial power, by the proper officer or officers, at a time and place appointed by law." *Id.* (quoting *Todd v. United States*, 158 U.S. 278, 284 (1895)). In the absence of express statutory authority, "a court can neither sue nor be sued in

16

its own right." *Id.* (quoting *State ex rel. Cleveland Mun. Court v. Cleveland City Council*, 296 N.E.2d 544, 546 (Ohio 1973)).

Plaintiffs have not directed the Court to any statute that would permit them to sue the state court.  As a matter of law, therefore, their claims against the Wyandot County Court of Common Pleas are dismissed.

### IV.  CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion to Dismiss.[10]

**IT IS SO ORDERED.**

        s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  December 19, 2016**

---

[10] While Defendants argue that Plaintiffs' claims also fail under Rule 12(b)(6) on the merits, (*see* Doc. 12 at 13–14), the Court need not address those arguments here.